# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 14-MJ-3204-CMM

**UNITED STATES OF AMERICA,**

**vs.**

**JESUS FERNANDEZ-PROFET,**

**Defendant.**

_____/

## DETENTION ORDER

On October 9, 2014, this Court held a hearing pursuant to 18 U.S.C. § 3142(f) in the above-entitled case to determine whether the Defendant, JESUS FERNANDEZ-PROFET, should be detained prior to trial before the assigned district judge.

Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of the Defendant at future court proceedings and the safety of the community. Therefore, it is ordered that JESUS FERNANDEZ-PROFET (the Defendant) shall be detained until disposition before the assigned district judge.

In accordance with the provisions of 18 U.S.C. § 3142(i)(1), this Court makes the following findings of fact and statement of reasons for the detention:

The weight of the evidence against the Defendant is substantial. 18 U.S.C. §3142(g)(2). The Defendant in this case is charged by criminal complaint with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 846. The Government proffered that a joint investigation by the Drug Enforcement Administration (DEA) and the Broward County Sheriff's Office (BSO) identified Alexander LEON-GONZALEZ (the co-defendant) as a suspected Miami Beach-based methamphetamine dealer. Using a confidential source (CS), agents conducted two successful controlled purchases of methamphetamine from LEON-GONZALEZ, occurring on September 10, 2014 and September 19, 2014. On September 10, 2014 the CS obtained 1.5 ounces of methamphetamine from LEON-GONZALEZ; and on September 19, 2014, the CS obtained 3 ounces of methamphetamine from LEON-GONZALEZ. The drug purchases occurred at LEON-GONZALEZ's apartment, which is located at the Cosmopolitan Towers on Miami Beach, Florida

On September 26, 2014, the agents executed a search warrant at LEON-GONZALEZ's apartment. Inside the apartment, agents found a plastic container holding nearly a pound of methamphetamine, two digital scales, and $29,964 in U.S. currency. All drugs seized in this case field-tested positive for the properties of methamphetamine. Based on the agents' training and experience, they determined that the methamphetamine was crystal methamphetamine.

LEON-GONZALEZ agreed to cooperate with law enforcement.  According to LEON-GONZALEZ, Jesus FERNANDEZ-PROFET (the Defendant) had been his methamphetamine source of supply over the past year.  A review of LEON-GONZALEZ's cellular phone revealed numerous text-message communications with the Defendant. The communications concerned methamphetamine transactions.

LEON-GONZALEZ also agreed to make recorded telephone calls to the Defendant for the purpose of arranging a methamphetamine transaction.  On September 26, 2014, during a recorded call, LEON-GONZALEZ and the Defendant discussed the prospect of a methamphetamine deal. Specifically, LEON-GONZALEZ said he needed more methamphetamine for a customer coming from New York.  In a subsequent call that same day, the Defendant said he spoke to his drug source and would have the methamphetamine by the following Tuesday or Wednesday.  On September 30, 2014, during a recorded call, LEON-GONZALEZ and the Defendant discussed their intended drug transaction.  Specifically, the Defendant indicated he would receive the methamphetamine once he sent money to his source.  The Defendant then agreed to supply the methamphetamine to LEON-GONZALEZ on Friday, October 3, 2014.

On October 2, 2014, during a recorded call, LEON-GONZALEZ and the Defendant again discussed the intended drug transaction.  Specifically, the Defendant explained that if he could resolve his debt with the drug source, then the source would

give him "30."   The Defendant also said the source would not break the methamphetamine down into smaller amounts. When LEON-GONZALEZ inquired if the Defendant had methamphetamine readily available, the Defendant said his source needed to "overnight" the drugs.

In a subsequent call on the same day, LEON-GONZALEZ asked the Defendant to have his source "overnight" the methamphetamine.  The Defendant indicated it was too late to receive the methamphetamine by the next day.  The Defendant suggested that he could provide LEON-GONZALEZ with the same poor-quality methamphetamine that LEON-GONZALEZ had previously returned to the Defendant. LEON-GONZALEZ agreed to accept the poor-quality methamphetamine.   The Defendant inquired as to the amount LEON-GONZALEZ desired.  LEON-GONZALEZ and the Defendant agreed the Defendant should provide "one, as always."  According to LEON-GONZALEZ, the Defendant would routinely provide one pound of methamphetamine as needed.

On October 3, 2014, at about 10:30 a.m., the Defendant arrived in the vicinity of the Cosmopolitan Towers.  After being approached by law-enforcement officers, the Defendant claimed that he arrived at the location merely to eat at a nearby café.  He initially denied knowing anyone who lived at the Cosmopolitan Towers, but he later admitted he came to the location to visit LEON-GONZALEZ, who the Defendant identified as his realtor.  The Defendant claimed to have met with LEON-GONZALEZ

on previous occasions only in the third-floor lobby of the Cosmopolitan Towers. LEON-GONZALEZ, however, said the Defendant had been inside LEON-GONZALEZ's residence on numerous occasions to deliver methamphetamine. Furthermore, the same cell phone the Defendant used to negotiate methamphetamine transactions with LEON-GONZALEZ was in the Defendant's possession on October 3, 2014.

The Defendant did not bring any contraband to the Cosmopolitan Towers on October 3, 2014, but a drug-detection canine alerted to the presence of narcotics in the defendant's vehicle.  A search of his residence also did not uncover contraband.

If convicted of the offense alleged in this case, the Defendant would qualify as a career offender under U.S.S.G. § 4B1.1, and his range of punishment would therefore be 360 months to life imprisonment.  Based on the Defendant's two felony drug convictions, the government could file a penalty-enhancement information, pursuant to 21 U.S.C. § 851, which would result in a mandatory life sentence upon his conviction.

This Court also notes the Defendant is currently on probation in Texas for a drug-trafficking offense; he has a history of non-compliance while on parole; and he has strong ties (i.e., immediate family members) to Cuba.

Because of the nature of the violations with which the Defendant is charged, the Bail Reform Act, 18 U.S.C. § 3142, creates a rebuttable presumption that the Defendant poses both a risk of flight and a danger to the community. This Court finds that, based

on the foregoing facts, this presumption has not been rebutted. This alone is sufficient to warrant a detention order.

In addition, based on the facts and circumstances outlined above, this Court also finds by a preponderance of the evidence that the Defendant, Jesus FERNANDEZ-PROFET, presents a risk of flight and that there are no conditions or combination of conditions of release that would reasonably assure the Defendant's appearance as required under Title 18 U.S.C. § 3142. Furthermore, this Court finds by clear and convincing evidence that there are no conditions of release or combination of release conditions that would reasonably assure the safety of any other person and the community as required under 18 U.S.C. § 3142(e).

The Court hereby directs that:

a.     The Defendant be detained without bond;

b.     The Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

c.     The Defendant be afforded reasonable opportunity for private consultation with counsel; and

d.     On order of a Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the Defendant

is confined, shall deliver the Defendant to a United States Marshal for the purpose of an

appearance in connection with any court proceeding.

**DONE AND ORDERED** in Chambers, in Miami, Florida, October 15, 2014.


Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:

Richard F. Della Fera, Esquire

Robert J. Brady, Jr., AUSA

Pretrial Services

U.S. Marshals Service